IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY COLLIER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16-cv-807-SMY-RJD ) |
| SALVADOR GODINEZ, et al., | ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Gregory Collier, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Pickneyville Correctional Center ("Pickneyville"). Specifically, Plaintiff alleges that he was denied due process when he was wrongly confined for one year in punitive segregation on a disciplinary charge that has since been expunged. He proceeds on one Count: a Fourteenth Amendment claim against Defendants Furlow and Spiller for depriving Plaintiff of a liberty interest without due process by confining him in segregation for one year based on an unsubstantiated disciplinary charge.

This matter is currently before the Court on Defendants' Motion for Summary Judgment (Doc. 53). Plaintiff filed a Response (Doc. 57). For the following reasons, Defendants' motion is **GRANTED**.

## Factual Background

Plaintiff Gregory Collier was an inmate at Pinckneyville on August 18, 2013 (Plaintiff's Deposition, Doc. 56 at 4). On that day, Collier was on the yard when a fight began (Plaintiff's Complaint, Doc. 1 at 5). Collier was told to get up against the fence; the guards checked his fists

and hands and then let him go back to his cell (Doc. 56 at 4). Approximately one hour after he returned to his cell, internal affairs came to his cell and transferred him to segregation (Id. at 4, 6). The internal affairs officer did not ask him any questions regarding the fight or provide an explanation as to why he was being taken to segregation (Id. at 6).

On September 17, 2013, an Offender Disciplinary Report was issued by C/O Furlow (Doc. 56-3). The Report indicated that an investigation revealed Collier was directly involved in the altercation on Yard #1 on August 18, 2013, and charged Collier with four offenses: 105 – Dangerous Disturbance, 205 – STG or Unauthorized Organizational Activity, 301 – Fighting, and 403 – Disobeying a Direct Order (Id. at 20).

The Report describes an altercation between members of multiple Security Threat Groups, including the Latin Kings, Satan's Disciples, Ganster Disciples, and Black Disciples (Id. at 20-21). It notes that Collier was positively identified by his ID card and by witnesses who were not identified in the Report for safety and security reasons (Id. at 21). The Report is signed, indicating that it was served on Collier by Employee Hoff on September 18, 2013 at 7:05 a.m. (Id. at 20). Hoff noted that Collier refused to sign the report (Id.). The Report advises that the offender has the right to appear and present a written or oral statement or explanation concerning the charges at a hearing (Id.). It further states that the offender may ask that witnesses be interviewed and, if necessary and relevant, that they may be called to testify during the hearing (Id.). Collier testified in his deposition that he received the Report on September 18, 2013, 30 days after being placed in segregation (Doc. 56 at 10).

Collier also alleges he did not receive advance notice of when the adjustment committee hearing would take place (Id. at 7). On September 25, 2013, he was taken from his cell to the adjustment committee hearing to provide testimony (Id.). He provided a verbal statement but did not submit a written statement or call any witnesses (Id.). He told the adjustment committee that

he was not guilty and that he had nothing to do with the fight (Id.). He testified that at the time of the fight, he was on the far side of the yard doing pull-ups (Id. at 5). There were other inmates around when he was doing pull-ups but he did not recall any of their names (Id.). Collier was previously affiliated with the Black Disciples, but he was no longer affiliated with the STG (Doc. 56 at 6). Following the adjustment committee hearing, a final summary report was issued – Collier was found guilty of all four charges and sentenced to one year segregation, one year revocation of good conduct credits, and his contact visits were restricted for six months (Doc. 56-3 at 22-23).

At his deposition, Collier testified that during his time in segregation, he was subjected to feces thrown by other inmates, excessive noise, and anxiety from being in a cell with an inmate with no out-date (Doc. 56 at 7-9). He suffered anxiety and depression from being in segregation (Id. at 9). He currently takes medication for both anxiety and depression (Id. at 10). While in segregation, he had access to the yard approximately five hours per week (Id. at 8).

Collier filed a grievance regarding his sentence to segregation, and the Prisoner Review Board issued a Disciplinary Reduction Notification on March 17, 2014, reducing the good conduct credit reduction from one year to three months (Doc. 1 at 9). On August 1, 2014, the Administrative Review Board recommended that Collier's Discipline Report be expunged, that he be released from segregation, and that a request for restoration of the three months good conduct credit be forwarded to the Prisoner Review Board (Id. at 11). The IDOC Director concurred with the recommendation on August 18, 2014 (Id.).

The original ticket was returned to Pinckneyville to be expunged by the Adjustment Committee on September 5, 2014 (Id.). On October 9, 2014, the Prisoner Review Board fully restored the three months of good conduct credits (Id. at 12).

## Legal Standards

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When deciding a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Defendant Furlow argues he is entitled to summary judgment because the discipline imposed on Collier did not give rise to a liberty interest requiring due process and that Collier actually received all protections required in prison disciplinary proceedings that affect liberty interests. Defendant Spiller argues he is entitled to summary judgment because Plaintiff has failed to provide evidence that he had actual knowledge of any alleged due process violations against Plaintiff. Defendants also assert the affirmative defense of qualified immunity.

Although incarceration necessarily makes many rights and privileges of ordinary citizens unavailable to inmates, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). In particular, prisoners

may not be deprived of life, liberty, or property without due process of law. *Id.* at 556 (citations omitted). To prove a due process claim, a plaintiff must establish that: (1) there was a protected interest at stake that necessitated the protections demanded by due process; and (2) the disciplinary hearing process was not in accordance with procedural due process requirements. *See Crane v. Logli*, 992 F.2d 136, 138 (7th Cir. 1993).

A liberty interest only exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). An inmate's liberty interest in avoiding segregation is limited. *Marion v. Columbia Corr. Inst.,* 559 F.3d 693, 697 (7th Cir. 2009). In assessing whether disciplinary segregation gives rise to a liberty interest, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion,* 559 F.3d at 697 (emphasis in original). Although relatively short terms of segregation rarely give rise to an inmate's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest *may* arise from a long term of confinement combined with atypical and significant hardships. *See Marion,* 559 F.3d at 697–98 (citing *Wilkinson v. Austin,* 545 U.S. 209, 224, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005); *Sandin,* 515 U.S. at 486, 115 S.Ct. 2293).

With respect to the second prong of the analysis, the Supreme Court has held that due process in a prison disciplinary proceeding requires: (1) advanced written notice of the disciplinary charge; (2) the opportunity to call witnesses and present documentary evidence; and (3) a written statement by the fact-finders of their decision that includes the evidence relied upon and the basis for their decision. *Lucas v. Montgomery*, 583 F.3d 1028, 1030 (7th Cir. 2009) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). Moreover, procedural due process requires not only that the *Wolff* factors be satisfied, but also that the disciplinary decision be

supported by "some evidence."  *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994); see also *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir.1988); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984) (per curiam); see also *Superintendent, Massachusetts Correctional Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985).  While the evidence relied upon by the disciplinary board must bear sufficient indicia of reliability, see *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987), once the court has found the evidence reliable, its inquiry ends – it should not look further to see whether other evidence in the record may have suggested an opposite conclusion.  See *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir.1989).

Here, Collier was confined in segregation for one year.  But in and of itself, one year in segregation does not automatically trigger Fourteenth Amendment due process protections.  Therefore, the Court must examine the conditions of Collier's confinement to determine if they were so extreme as to implicate due process considerations.

Collier alleges that while in segregation, he was subjected to feces thrown by inmates and excessive noise.  He had difficulty sleeping and suffered anxiety from being in a cell with an inmate with no out-date.  Collier also claims that inmates in segregation received fewer showers per week, that visits were limited to one-hour twice per month, and that inmates in segregation were denied group activities and vocational classes.  He had access to the yard approximately five hours per week.  Medical and mental health services were provided by staff during rounds of the unit.

Collier has provided no evidence as to how noise from other prisoners, difficulty sleeping, and anxiety from being in a cell with an inmate with no out-date, were significantly harsher conditions in segregation than in the general population.  He complains about other prisoners throwing feces, but acknowledges that he never reported this behavior.  On these facts, it is unlikely that Collier suffered a deprivation of a liberty interest that entitled him to due

process protections. However, out of an abudance of caution, the Court will review whether procedural due process requirements were met.

As noted in the Screening Order (Doc. 7), Collier does not allege denial of procedural due process in the conduct of his disciplinary hearing.[1] Rather, he focuses on the lack of evidence against him, which ultimately led to the charge being expunged. The Offender Disciplinary Report charging Collier states, "positive ID was made by Collier, Gregory M31061 State ID and identification by sources, who have been deem[ed] reliable and will remain nameless for the safety and security of the facility."

In response to a Motion to Compel (Doc. 41) filed by Collier in this case, the Court ordered Defendants to submit the confidential witness interview reports surrounding the August 13, 2013 yard disturbance for in camera review (Doc. 43). Following the review, the Court ordered Defendants to produce a copy of the witness reports with all personal identifying information of the witnesses redacted (Doc. 44). A review of the reports reveals that three witnesses identified inmate "Lil Greg" as being involved in the fight. One witness states that after the fight began, he observed 'Lil Greg' run from the dip bar to assist 'Cam' in the altercation." A second witness identified "Lil Greg" as a member of the Black Disciples and stated he was one of the players in the fight. The third witness states that he heard the Latin Kings and Black Disciples get into it and that "Kam" and "Lil Greg" were involved in the fight.

The witness interview reports provide evidentiary support for the disciplinary charges filed against Collier. Other than his own denial, Collier did not provide any evidence or witness

---

[1] While the defendants gave Collier the disciplinary ticket 30 days after the date of the incident for which he was falsely charged, the timeline Collier presented to the Court indicates that he nonetheless received advance notice of the charges before his Adjustment Committee hearing, and he does not allege the delay in receiving the ticket was so egregious that it interfered with his ability and right to prepare his defense. Further, while the Illinois Administrative Code does compel prison officials to serve a ticket to an offender no more than eight days after the commission of the underlying offense, see ILL. ADMIN. CODE tit. 20 § 504.30(f), the violation of a prison rule, by itself, does not give rise to a constitutional claim, see *Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (§ 1983 provides a remedy for constitutional violations, not violations of state statutes and regulations).

testimony to contradict the confidential witnesses at the adjustment committee hearing. Even if other witnesses had testified to Collier's version of events, the statements of the confidential witnesses would still provide "some evidence" to support the charges and the Adjustment Committee's finding that Collier was guilty of being involved in the August 18, 2013 fight. The fact that the ARB later expunged the ticket because the language used in the disciplinary report did not sufficiently substantiate the charges, does not mean there was not sufficient evidence to support the initial filing of charges. The Disciplinary Report and the Adjustment Committee's decision were supported by evidence with sufficient indicia of reliability to comport with the requirements of due process.[2]

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 53) is **GRANTED**; Plaintiff Gregory Collier's claims are **DISMISSED WITH PREJUDICE** as to all remaining defendants. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED: July 16, 2018**

                                        **s/ Staci M. Yandle**
                                        **STACI M. YANDLE**
                                        **United States District Judge**

---

[2] Defendant Spiller also argues the claims against him are predicated on supervisory liability which does not apply under § 1983. The issue need not be addressed as the Court has already concluded that the evidence does not establish a violation of Collier's Rights. Defendants also assert that they are entitled to qualified immunity on Collier's claims. Because the Court has concluded that the evidence does not create a genuine issue of material fact as to whether Defendants violated Collier's Fourteenth Amendment rights to due process, it will not address the issue of qualified immunity.